[795 NYS2d 561]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DONNA WILLIAMS, Respondent.

First Department, May 26, 2005

APPEARANCES OF COUNSEL

*Robert T. Johnson, District Attorney*, Bronx (*Stanley R. Kaplan* and *Joseph N. Ferdenzi* of counsel), for appellant.

*Feldman and Feldman*, Uniondale (*Steven A. Feldman* of counsel), for respondent.

**OPINION OF THE COURT**

GONZALEZ, J.

In this appeal by the People from Supreme Court's dismissal of the indictment on the ground of legally insufficient evidence, we must decide whether the defendant's failure to disclose the identity of a robber to the police immediately after witnessing the robbery, standing alone, constitutes "criminal assistance" under this State's hindering prosecution statute (Penal Law § 205.50). Because we find that defendant's failure to disclose to the police that the robber was her boyfriend constituted prima facie evidence of "deception" for the purpose of preventing the discovery or apprehension of a known felon within the meaning of Penal Law § 205.50 (4), the evidence before the grand jury was legally sufficient to support the charges. Accordingly, we reverse and reinstate the indictment.

Defendant was indicted by a Bronx County grand jury for the crimes of hindering prosecution in the second and third degrees (Penal Law §§ 205.60, 205.55). The charges arose out of a gunpoint robbery on May 11, 2003 at a Taco Bell restaurant, where defendant was employed as store manager. The robbery was committed by James Bazemore, who was defendant's boyfriend at the time. The evidence before the grand jury consisted primarily of a videotaped statement made by defendant to the police and an Assistant District Attorney two days after the robbery.

The evidence showed that the robber entered the store on May 11, 2003, at about 10:30 A.M., as defendant and two coworkers were preparing to open. The robber, whose head was covered and face partially concealed, ordered one of the coworkers into the back of the store at gunpoint and directed him to remove his clothes and jewelry. Next, the robber ordered defendant to open the safe and hand over the money. Screaming and begging the robber not to hurt the coworker, defendant complied. The robber then fled through the restaurant's back door.

Defendant called 911 and reported the robbery. When the police arrived, she described what had happened and gave them a description of the robber. She also provided the police with the

restaurant's surveillance tape. Despite her knowledge of the identity of the robber, she did not disclose this to the police at that time.

During their investigation, the detectives learned from one of the defendant's coworkers that the robber was, in fact, defendant's boyfriend. Their suspicions having been raised, the detectives picked up defendant two days after the robbery and brought her to the precinct for questioning. After being given her *Miranda* rights, defendant was asked what had happened at Taco Bell and, without any additional questioning, she volunteered "my boyfriend robbed it" and provided his name.

When the Assistant District Attorney asked why she had waited two days to tell them this, she responded "it's been bothering me and I've been scared . . . scared of the whole thing . . . it didn't dawn on me what just happened . . . I feel I didn't do nothing wrong, I just got caught up and was scared." Upon further inquiry, she denied any prior knowledge that her boyfriend was going to rob the restaurant.

After defendant's indictment, her counsel moved to inspect the grand jury minutes and dismiss the indictment on the ground that the evidence was legally insufficient to establish the offenses charged. The People opposed the motion, subject to an in camera inspection of the grand jury minutes. By written decision dated April 5, 2004, Supreme Court granted defendant's motion to dismiss the indictment for legal insufficiency, with leave to the People to apply for court authorization to resubmit the charges to another grand jury.

The court's dismissal was based on both factual and legal grounds. First, the court concluded that the evidence did "not clearly establish th[e] theory" that defendant's conduct was intended to prevent, hinder or delay Bazemore's discovery or apprehension, since the evidence showed that immediately after the robbery the defendant was "extremely scared, agitated and confused by what had just occurred." Essentially, this was a factual finding that the defendant lacked the necessary criminal intent required by the statute.

Second, the court found that even though "it would have indeed been better citizenship" to immediately report the robber's identity to the police, "her omission to so act at that moment falls short of the willful deception with intent to prevent, hinder, obstruct or delay the forces of justice" to establish guilt of the crimes charged.

On appeal, the People argue that dismissal of the indictment for legal insufficiency was error because there was prima facie evidence before the grand jury that defendant engaged in conduct constituting the crimes of hindering prosecution in the second and third degrees. They further contend that the motion court usurped the grand jurors' authority by ruling on the persuasiveness of proof regarding the defendant's intent. We agree with both arguments.

A grand jury may indict when it possesses competent evidence that establishes every element of an offense by legally sufficient evidence and provides reasonable cause to believe that a person has committed such offense (CPL 190.65 [1]). However, in reviewing a grand jury's determination to indict, a court may not examine the quality or persuasiveness of the proof to establish reasonable cause, which is solely the responsibility of the factfinders on the grand jury panel (*People v Reyes*, 75 NY2d 590, 593 [1990]; *People v Jennings*, 69 NY2d 103, 114-115 [1986]). Instead, judicial review is limited to whether the charge voted by the grand jury is supported by legally sufficient evidence, namely, competent evidence which, if accepted as true, would establish every element of the offense and defendant's commission thereof (CPL 70.10 [1]; *Jennings*, 69 NY2d at 115).

To the extent the dismissal was based on a finding that defendant lacked the criminal intent required by the statute, it was erroneous. The grand jury is the exclusive judge of the facts (CPL 190.25 [5]; *People v Pelchat*, 62 NY2d 97, 105 [1984]), and a reviewing court may not usurp its role by substituting its own inferences for those drawn by the grand jurors (*People v Dordal*, 55 NY2d 954, 956 [1982]). The inference apparently drawn by the court that defendant acted not with the intent to delay Bazemore's apprehension, but rather because she was scared or confused in the aftermath of the robbery, violated the above principle. Although the issue of defendant's lack of criminal intent may form the basis of a defense at trial, the motion court exceeded its authority by deciding the issue as a matter of law based on its own assessment of the quality or persuasiveness of the proof before the grand jury (*People v Ballou*, 121 AD2d 861, 862 [1986], *lv denied* 68 NY2d 809 [1986]).

In contrast, the motion court's legal conclusion that defendant's conduct in concealing the robber's identity from the police did not rise to the level of willful deception under the statute was within the court's statutory authority. The issue, however, appears to be undecided under New York law and requires examination of the statutory provisions at issue.

A person is guilty of hindering prosecution in the second or third degree when he or she "renders criminal assistance to a person" who has committed a class B or class C felony (second degree [Penal Law § 205.60]), or who has committed a felony (third degree [Penal Law § 205.55]). Under Penal Law § 205.50 (4), a person renders "criminal assistance" when acting "with intent to prevent, hinder or delay the discovery or apprehension of . . . a person who he knows or believes has committed a crime . . . he . . . [p]revents or obstructs, by means of force, intimidation or deception, anyone from performing an act which might aid in the discovery or apprehension of such person."

The People contend that by failing to disclose to the police that her boyfriend was the robber, a person who committed a class B or class C felony, the defendant engaged in deceptive conduct that prevented or obstructed the police from identifying and apprehending the perpetrator of the robbery. For her part, defendant argues that deceit alone is insufficient to establish criminal liability where there is no evidence linking defendant to the underlying crime (see People v Lorenzo, 110 Misc 2d 410, 418 [Sup Ct, NY County 1981]). The pivotal question, therefore, is whether a person's deliberate nondisclosure of the identity of a known felon to the police during a criminal investigation constitutes "criminal assistance" by deception within the meaning of the hindering prosecution statute. For the reasons that follow, we believe that it does.

The Penal Law crime of hindering prosecution is an expansion of the former Penal Law offense of being an accessory after the fact, which also was a crime at common law (see Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 205.50, at 337). The elements of the common-law offense of being an accessory after the fact are: (1) a completed felony must have been committed; (2) the defendant had actual knowledge of the commission of the felony and its participants; and (3) with such knowledge, the defendant aided the felon personally for the purpose of hindering the felon's apprehension, conviction or punishment (2 LaFave, Substantive Criminal Law § 13.6 [a], at 400-401 [2d ed]).

At common law, it was often assumed that the rendering of *any* aid or assistance to a felon to hinder his apprehension or prosecution would give rise to liability as an accessory (see 2 LaFave § 13.6 [a], at 402, citing 4 W. Blackstone, Commentaries on the Laws of England, at 37), although some early cases held that the mere failure to report the felony or to arrest the felon

would not suffice (*id.*; *see Wren v Commonwealth*, 67 Va 952 [1875]).

Today, most states have codified the offense of being an accessory after the fact, and most of the statutes list the types of assistance that will render an actor liable, such as harboring or concealing the felon; providing him with the means of avoiding apprehension (i.e., money, transportation or a disguise); concealing, destroying or tampering with evidence; warning the felon of his impending discovery or apprehension; and using force, deception or intimidation to prevent or obstruct the felon's discovery or apprehension (*see* 2 LaFave § 13.6 [a], at 407-408 [and statutes cited therein]).

In light of the fact that most of these types of "assistance" appear to contemplate some affirmative conduct by the defendant, and because of the general disfavor with which the offense of misprision of a felony has been held in this country,[1] some jurisdictions have determined that the mere passive failure to report a known felony to the police is not sufficient to support a conviction as an accessory after the fact (*see People v Sandoval*, 791 P2d 1211, 1213 [Colo App 1990]; *State v Brown*, 197 Neb 131, 247 NW2d 616 [1976]; *State v Clifford*, 263 Or 436, 502 P2d 1371 [1972]; *United States v Foy*, 416 F2d 940 [7th Cir 1969]; *Lowe v People*, 135 Colo 209, 309 P2d 601 [1957]).

Other courts have taken a slightly broader view, however, concluding that a person may be subject to criminal liability as an accessory after the fact if, when acting with the intent to hinder the apprehension or prosecution of a known felon, he or she affirmatively conceals the commission of a felony or the identity of the perpetrators during a criminal investigation (*see State v Bezak*, 2004 WL 2830799, 2004 Ohio App LEXIS 6048 [Ohio Ct App 2004]; *United States v Day*, 533 F2d 524 [10th Cir 1976], *cert denied* 444 US 902 [1979]; *United States v Davis*, 42 MJ 453 [US Ct App Armed Forces 1995]; *People v Duty*, 269 Cal App 2d 97, 74 Cal Rptr 606 [1969]; *Davis v State*, 96 Ark 7, 130 SW 547 [1910]).

---

1. At common law, a person was guilty of "misprision of felony" when, knowing of the commission of a felony, he failed to report it to the authorities. Although the offense constitutes a crime under federal law (18 USC § 4), it has been given a less than warm reception by many jurisdictions within this country (*People v Meyers*, 72 Misc 2d 1003, 1006 [Crim Ct, Kings County 1973] ["New York has never recognized the common-law crime of misprision, the failure to report a crime"]; *Holland v State*, 302 So 2d 806 [Fla Dist Ct App, 2d Dist 1974]; 4 Wharton's Criminal Law § 572, at 285 [15th ed]).

Although there is no appellate authority in New York directly on point, in our view the defendant's conduct in this case, namely, reporting the commission of a felony to the police but omitting her knowledge of the identity of the perpetrator, falls within the statutory definition of criminal assistance. Beginning with the plain meaning of the statutory language, it is apparent that defendant's nondisclosure "[p]revent[ed] or obstruct[ed], by means of . . . deception" the police from attempting to apprehend Bazemore as the perpetrator of the robbery (Penal Law § 205.50 [4]). Indeed, defendant admitted in her videotaped statement that she recognized defendant as the perpetrator and failed to mention it to the police during the initial interview. She further admits that she provided the police with a description of the perpetrator, although the record does not disclose whether the description matched Bazemore. Accordingly, there is no dispute that defendant actively deceived the police into thinking that the perpetrator's identity was unknown. Nor is it seriously disputed that defendant's deception, at a minimum, obstructed the efforts of the police to apprehend the perpetrator.[2] Thus, assuming the presence of the criminal intent required by the statute, the defendant's conduct fits neatly into the statutory definition of criminal assistance under Penal Law § 250.50 (4).

We also think a proper distinction may be drawn between the mere failure to report the commission of a felony to the police, on the one hand, and the affirmative act of concealing the identity of a known felon by false statement or material omission, on the other. In *United States v Day* (533 F2d at 526), for instance, the court held that the trial evidence was legally sufficient to support the defendant's conviction of being an accessory after the fact to murder where, despite his own participation in the subject attack with two accomplices, he falsely told the investigating agent that the attack was committed by three unknown persons wearing masks, whom he could not identify. We see no material distinction between the defendant Day's false statement to the police and this defendant's affirmative concealment of the perpetrator by providing a description and withholding his identity. In both circumstances, the defendants went out of their way to protect the perpetrator of a crime.

In *Davis v State* (96 Ark at 13, 130 SW at 549), the Supreme Court of Arkansas held that the evidence at trial was insuf-

---

2. The record is silent as to whether Bazemore was ever apprehended or prosecuted for the robbery.

ficient to convict defendant of being an accessory after the fact to an illegal abortion because "[t]he mere passive failure to disclose the commission of a crime" is not enough. In dicta, however, the court went on to state that "[t]here must be some affirmative act tending toward the concealment of its commission *or a refusal to give knowledge of the commission of a crime, when same is sought for by the officials of the person having such knowledge*" (*id.* [emphasis added]). Thus, the mere failure to disclose was treated differently from the deliberate withholding of information from the police.

Also, in *United States v Davis* (42 MJ at 455-456), a court of military appeals upheld an accessory after the fact conviction where the accused's false and misleading statements to investigators, in which he denied knowing the identity of the thief and implied that an innocent third party was guilty, constituted "assistance" under the military code's accessory statute.

The distinction highlighted by these cases is a sound one. A primary reason courts have required affirmative acts for a conviction as an accessory after the fact is the notion that criminalizing a citizen's mere failure to report a crime to the police is incongruous with our nation's system of justice (*see Marbury v Brooks*, 7 Wheat [20 US] 556, 575-576 [1822] ["It may be the duty of a citizen to accuse every offender, and to proclaim every offence which comes to his knowledge; but the law which would punish him in every case for not performing this duty is too harsh for man"]; *see also* Wenik, *Forcing the Bystander to Get Involved: A Case for a Statute Requiring Witnesses to Report Crime*, 94 Yale LJ 1787, 1793 [1985] [judicial decisions in this area "reflect American courts' reluctance to impose a positive duty to report crime"]). Requiring citizens to come forward to report any known felony to the police upon pain of arrest and prosecution fails to take into account the arguably legitimate reasons some persons may have for their silence, such as fear or lack of confidence, a general mistrust of the police, fear of reprisal or a desire to "not get involved."[3]

These rationales lose much of their persuasive force, however, when a defendant speaks to law enforcement authorities during a criminal investigation, but deceitfully omits significant infor-

---

3. Of course, in addition to the affirmative act requirement, the mens rea element of the hindering prosecution statute further protects against unfounded prosecutions for nondisclosure of criminal acts without criminal intent (Penal Law § 205.50).

mation that hinders the apprehension or prosecution of a known felon. In this circumstance, there is no danger of oppressive government sanction for merely "not wanting to get involved"; here, it was defendant who initiated contact with the police. While a person understandably may feel compelled by the circumstances to cooperate with the police, the fact remains that the decision to report the crime to the police while simultaneously withholding the identity of the perpetrator constitutes an "affirmative act."

The defendant in this case crossed the line from mere passive nondisclosure to affirmative concealment of the identity of a known felon. It is difficult to imagine how a person could use deception to hinder a felon's apprehension in a more fundamental way than to deliberately withhold the felon's name. While it may seem harsh to some that this defendant can be subjected to criminal prosecution even though she quickly reversed course and told the truth about the robbery shortly after her deception, that fact might be a discretionary ground to decline prosecution, but it is not a legal reason to dismiss the indictment. Defendant may, of course, avail herself of the defense suggested in her taped statement to the police, to wit, that she lacked the intent to hinder, delay or prevent the apprehension or prosecution of Bazemore. Under the present circumstances, consideration of that defense must await the trial of this indictment.

Accordingly, the order of the Supreme Court, Bronx County (Lawrence H. Bernstein, J.), entered April 5, 2004, which granted defendant's motion to dismiss the indictment on the ground of legal insufficiency, should be reversed, on the law, the indictment reinstated, and the matter remanded for further proceedings.

BUCKLEY, P.J., TOM, MARLOW and CATTERSON, JJ., concur.

Order, Supreme Court, Bronx County, entered April 5, 2004, reversed, on the law, the indictment reinstated and the matter remanded for further proceedings.